May it please the court, Robin Packle with my co-counsel Angela Hansen representing defendant appellant James Lucero. I will be arguing both the vagueness challenge to the WOTUS rule and the argument that the new rule should apply to Mr. Lucero's conduct. And there are a number of facts that are applicable to both these arguments that I'd like to review quickly. First of all, the statutory language here, navigable waters, which the statute defines as waters of the United States or WOTUS, is ambiguous as applied in this case. Well, it's ambiguous to the extent that it applies in general to waters that are not actually navigable. Second, under Rapanos, the relevant parts of the agency's definitions of waters of the United States, that is the adjacent wetlands and the tributary, are at least not entitled to deference as reasonable interpretations of the statute. So those regulatory provisions do not directly govern the conduct in this case. Third, because of the deficiencies of the regulatory definition, the definition of navigable waters applied in this case was based not only on the regulation, but also on Justice Kennedy's Rapanos significant nexus standard and this court's definition of tributary. And two of the consequences that flow from these facts are, one, that the Clean Water Act was unconstitutionally vague as applied here, and two, that the new regulation should apply to Mr. Lucero's conduct. Turning specifically to the vagueness argument, there is no argument here that the Mr. Lucero caused solid fill material to be deposited were actually navigable. And in fact, they were not even at the time that the conduct occurred, apparently waters. If you look at the photographs that we submitted at ER 61 to 66, also the government's supplemental excerpts of record at eight, you can see that what we're talking about here is not something that an ordinary person would identify in any way as a water. This was land. The land was dry. It was being developed for purposes of residences, golf course. In addition, at the time of Mr. Lucero's conduct, in the summer of 2014, there had been several years of drought. Counsel, why is that relevant? Because in Rapanos and in Riverside, the court has approved of the regulations allowing wetlands to be part of WOTUS. That's correct, your honor. And wetlands in general are part of WOTUS. And we have no question that legally they can be part of WOTUS. The question here, though, is whether the scheme here was vague as applied to the fill sites here. And for a person of ordinary intelligence, looking at the fill sites at the time of Mr. Lucero's conduct, it was not even apparent that these sites were wetlands and that the regulatory definition of wetlands, which we didn't really dispute here, but it was soil that allows wetland plants to grow. And so for a scientist, that may be easy to understand. But for Mr. Lucero, a person of ordinary intelligence, knowing whether this was pickleweed or dandelions, there was the regulatory definition of wetlands would not have even given him notice under the conditions at the time that these were wetlands. Well, was there a procedure? The government argues there was a procedure by which he could have made an inquiry to the Corps of Engineers. Can you explain that process and why it would not have been sufficient for your client? I mean, you don't have to give an in-depth explanation, but why was that not a reasonable way for your client to determine if this was a wetland? Well, that was not sufficient in this case, your honor. This is a criminal case and the burden is on the statute and the law to give a person of ordinary intelligence notice that what they were doing, their conduct was criminal. And requiring him to hire an expert or go to the Corps, and in this case, the landowners had to have their own maps drawn. The government in hiring Dr. Huffman as an expert spent $150,000. There's no requirement that a person be on notice or have a duty to do this kind of investigation before being put on notice. It's the burden of the statute, in other words, in the statutory scheme to put the person on notice that this conduct, that was not inherently criminal, we're talking about unloading dirt, that that might violate a federal criminal statute. Well, the fact that he had to cut a lock to enter the property and that he used false documents to show potential customers that he had permission to place dirt, as you call it, at this location, why didn't that give him notice that his conduct was illegal? Because that did not give him notice. The conduct was illegal only in the sense that he deposited fill into the waters of the United States. And the fact that he perhaps was on the land illegally did not give him notice that the sites were waters of the United States and this was a violation of federal Clean Water Act. Perhaps the government could have charged him with trespassing. That's not what we're talking about here. We're talking about a felony violation of the Clean Water Act and whether that set of statutes as interpreted by the regulations and ultimately by the Supreme Court, Justice Kennedy and Rapanos, whether that put a reasonable person of ordinary intelligence on notice that what the deposit of solid fill material on these sites was illegal. And whether or not he cut the lock, it didn't matter for purposes of the Clean Water Act scheme, whether or not he had the landowner's permission. In Rapanos and in Sackett, it was the landowners who were violating the Clean Water Act. And the permission of the landowners and whether he was on the land illegally or not had nothing to do with whether the statute and the regulations and Justice Kennedy's significant nexus standard gave him notice that these sites were waters of the United States that he was not allowed to put dirt in. Ms. Packett, why is there a requirement or why do you believe there's a there was this requirement that he know that the waters were waters of the fill into a water, then why isn't that enough for knowledge under the statute and under the act? My counsel, co-counsel will address the knowledge requirement argument here. I think the knowledge requirement does play into the vagueness argument because there was no requirement here that he have any knowledge about the facts that would have made these waters the United States. And as I said, at the time, and if you look at the photographs, you can see this looked like dry land. So there was no actual notice from the fill sites and we were prevented from presenting preventing evidence on that point. But there was no actual notice. But the lack of knowledge requirement does play into the vagueness argument. I mean, the court has said that a mens reo requirement can help cure vagueness from the statute, but there was no requirement here that Mr. Lucero actually have any knowledge that these sites were water, that they were connected in any way to an actually navigable water, which was Mallory Slough. And again, do you think that the phrase navigable waters in the statute, is that a jurisdictional element or is that actually part of the prohibitive conduct? As my co-counsel will go into in more depth, it has some jurisdictional elements to it, but it also helps to define the criminal conduct here. Discharging fill on land is not inherently criminal. People move dirt all the time and they put it in various places, whether for construction, for gardening, for whatever. And that itself is not an inherently criminal act. So the fact that it was into the... Do you think discharging into water is inherently criminal? I think if it was something that was an ocean, something clearly identifiable as a navigable water, Lake Tahoe, the ocean as in White's and Hoff, I believe in some of the other cases, yes, the statute would give notice that that was criminal conduct to discharge fill into navigable waters without a permit from a point source. The statute would give notice that if it was an actually navigable water, that that was criminal conduct. But for something here where you're talking about discharging dirt on a piece of land, no, that's not inherently criminal. And I would amend my answer, Your Honor. I think if it's actually a pollutant, something toxic, and somebody is operating a plant that's under a permitting scheme as in White's and Hoff, discharging into the ocean, because those aren't the facts here, I would amend my statement and I don't know that necessarily putting dirt into the ocean, I don't think that would be necessarily criminal. I would like to turn the case now over to my co-counsel. Thank you. May it please the court. My name is Angela Hansen and I am Ms. Packle's co-counsel and counsel for to be sure the vagueness questions and some of the questions Your Honors have asked of Ms. Packle permeated the trial. And there's a fact that I really want to emphasize for the court, because there's been confusion about this at the trial, in the district court, and even here on appeal. We had a defense at trial based on the way the land was delineated. This is a complex site. It was a problematic site, as the experts stated. We had an expert declaration for offer of proof for the knowledge requirement at ER 1147 that I hope the court will read, explaining that this land for 50 years was plowed and mowed. That took the hydrology and changed it and made it difficult. So for 10 years, the landowners studied this land and determined and made two different determinations. They did not determine WOTUS. They decided whether there were wetlands, uplands, other waters, or tributaries. And their findings... Counsel, can you turn to the statute? So what is your belief the knowledge element goes to? It goes to WOTUS itself? It goes to the definition, Your Honor, under 1362.12. Defines the discharge of a pollutant. And it says discharge of a pollutant means any addition of a pollutant to navigable waters from any point source. So the knowledge would go to the addition of a pollutant into navigable waters. It does not apply to the permit. We would concede, Your Honor, he did not need to have knowledge that a permit was required. Counsel, 1326.6 defines pollutant to be discharged into water. Your Honor, that does not apply in our case. We have fill material. And our discharge was under 1344, not 1342, as the government suggested. Subsection 6 of 1362 does not apply in our case. That type of material, what we have here is the discharge of fill, which is different. And it's a different regulatory scheme that's required. And there's a reason there's a difference. He was charged for the 1362. 1362.7 and 12 were the applicable definitions that applied navigable waters and the discharge of a pollutant. Right. I'm sorry, go ahead. I was just going to say with the 13 under the 12, wouldn't that be the discharge of the pollutant into water definition? Into navigable waters. Yes. But then you have to look at pollutant, which would be the fill into water. That is not the definition that applies in this case. That is for 1342, not 1344, which he was charged with in this case, which is a different... It's just the definition of pollutant. If you agree that 1362.12 applies, what's the definition of pollutant? It's in 33 United States Code 1344. It's fill material is what he was charged with, Your Honor. Discharged into navigable waters, the secretary may issue permits after notice and opportunity for public hearings for the discharge of dredged or fill material. That's our definition. It's different than the pollutant. The pollutant definition goes to matters that are like toxic chemicals, like the type of chemical, the sludge in Weizenhoff. But dredge material is not part of 1362.12. So I don't know how you put that in there. Your Honor, I will look at that question for the rebuttal. I am certain that this case charges fill material, which is different from the type of pollutant that subsection six applies to, and I'll get the answer for that. I think you're correct. But when you apply 1362.12, it says any pollutant. And so therefore, I think you would use the definition of pollutant, which is in 1362.6, which requires it be discharged into water. I will answer that question on rebuttal, Your Honor. I do want to explain, though, that the knowledge requirement is not purely jurisdictional for WOTUS. The government needed to establish that this was somehow criminal conduct. There could be an innocent discharge into an area like this if someone went camping and left their pit with a fire pit at a site like this. There are cases in the Supreme Court requiring knowledge to establish a criminal act, such as the Staples case, I think is very important here, in that guns are not a public welfare offense, and that the government had to prove knowledge that the gun was criminal. And how was it criminal? By proving knowledge that the extra part was added to the machine gun to make it a machine gun. No, that would be the criminal action, and there'd be knowledge that, you know, in your example, that the person modified the machine gun. But the jurisdictional issue would still be that the gun was, you know, part of the, transported as part of commerce, through interstate commerce. So that would be more of a jurisdictional issue. Why wouldn't the Navada Boko waters be a jurisdictional issue when you already have the mens rea for water? In other words, that it's a pollutant. You have to know it's a pollutant because it's been put in water, and that's the ad. Nothing was placed in water in this case, Your Honor. It was placed on land, and the question is whether there was knowledge that it was a wetland, a tributary. But isn't that an issue for the jury to decide whether it was placed in water? The jury actually didn't get to make the determination because all of the experts were allowed to say that it was all WOTUS anyway, and that the separate delineations under the regulation, 328.3, didn't. I'm not saying that it was placed in wetland, but that it was placed in water. Yeah, the jury did not. Nothing was placed in actual water. It had to have been placed in one of the categories of the regulation under 328.3. Was it a tributary of a special water listed in those subsections, or was it in other water, as we plan to argue and wanted to submit evidence? Your Honor, I'm going to finish my answer really quickly and then reserve my last two minutes. It had to fit into one of the categories under 328.3, and we argued at trial that this was in other water as it had been mapped for 10 years, which required a commerce element that couldn't be proven here. But all the experts were allowed to say it was WOTUS without regard to where in the regulation it landed. But he wasn't charged with depositing into other water. I understand the superseding indictment, so that was no longer an issue. But it was our defense that it was other water, and thus it was not jurisdictional because you couldn't prove the elements that are required for that, which is the commerce element. And our evidence of other water was that the experts had mapped it for 10 years as other water and determined in the jurisdictional determination of the court, Your Honor, look at ER 54 and 55. They call it other water, which is a specific definition under the regulation. And don't let that confuse the issues on appeal like it did at trial. Those are separate and distinct, and that was our defense. And we weren't allowed to rebut the government's evidence that their expert said, oh, it's all the same thing. It doesn't matter. I'll reserve the rest of my time, Your Honor. Thank you. Mr. Gunter. Good morning. I'm David Gunter from the Department of Justice. Can you hear me? Yes. Very good. Thank you. Here on behalf of the United States, Mr. Lucero claims that it was impossible for him to tell whether the Clean Water Act applied to the 13 acres of somebody else's property where he dumped hundreds of truckloads of construction debris. But the owners of that land already knew exactly what the Clean Water Act required. They had a full delineation of waters of the United States done by a group of outside experts and approved by the Army Corps of Engineers. And what they found was a clear basis for Clean Water Act jurisdiction. The waters on this site have a direct hydrological connection to Mowery Slough, a traditional unavailable water. And the physical characteristics of the property include water constantly in channels, wet soil and mud at the dumping sites, according to witnesses, topographical features that indicate tributaries, and wetland vegetation. And those are all facts that Mr. Lucero could see when he walked the land. Based on those facts, the jury was properly able to find that his dumping scheme violated the Clean Water Act. I'll turn first to the argument that the Clean Water Act is unconstitutionally vague. And this argument is not about what Mr. Lucero... Sorry, do you mind starting with the knowledge element? I don't mind. Here, there are a couple of questions for the court to answer. The district court gave the same instruction that the district court in Robertson had given in which this court had recently affirmed and was relying on that instruction. And obviously, as we've heard, Mr. Lucero wanted the jury to be instructed differently. And his argument raises two main questions. The first is whether the court was wrong to reject his proposed instruction. And the second was, should it have given some different instruction? And I'll turn first to the question of whether the district court was wrong to reject his proposed instruction. Before I get there, though, I do want to not omit to rebut the argument that Phil is not the same as pollutant. Mr. Lucero was charged with a violation of 33 U.S.C. 1311. That's the Act's prohibition. It says the discharge of a pollutant into the Navajo waters is prohibited. Other sections address who may give a permit for those activities. EPA gives a permit for some activities under 1342. The Corps gives a permit for discharge of fill material under 1344. The fact that those provisions are different doesn't prevent fill material from being a pollutant with respect to the prohibition in section 1311. The 1344 goes to the permit. Is that what you're saying? That's right. 1344 establishes who may, that the Corps may authorize discharge of fill material with a permit. But it does not address whether fill material is a pollutant. Thank you. So, anyway, back to the knowledge requirement. According to Mr. Lucero, you show that a defendant has knowledge by showing his knowledge of the physical characteristics that indicate waters or wetlands. And I can talk if the court wants about what evidence there was in the site. But what the district court found is that the discharge element does not include knowledge of jurisdiction. And that was correct because it is in compliance with the general rule that we know from the Supreme Court in FIOLA, among many other cases, that a defendant does not have to know facts about an element that only exists to provide federal jurisdiction over the pollutant was discharged into water. Correct. We agree with the instruction that with the part of the instruction that he requested, which is that he has to know the physical facts that indicate the presence of waters or wetlands. Now, many experts here testified that they were able to identify the presence of waters or wetlands even without flowing water on the ground. And so that's not what he was instructed on. Didn't his instructions had that he only had to know that he discharged a pollutant? It didn't say that he had to have any knowledge of where it was discharged. The district court instructed the jury that he had to have knowledge that he was discharging a pollutant, in this case, fill material. So he had to know that he was discharging fill material. And the district court's instruction also said that fill material requires discharge into waters. If the jury had believed that he knew he was discharging fill material, but that he knew that he was discharging it onto dry land, I think that under these instructions, they would not have convicted him because they would have concluded that he did not know it was fill material. How is that the case? The definition of fill material is like five pages after the elements, and it doesn't at all make it clear that it connects that knowledge to the definition of fill material. Judge Mumete, I agree that those instructions could have been clearer. And so if you conclude that the district court was required to redraw its instruction after rejecting Lucero's instruction, then perhaps it should have been clearer. Now, I think that those instructions fairly covered the law, which is the standard, and you may or may not agree with that. But the prior question is, was the district court to write that instruction for the jury when Lucero did not ask for it? If it's a misstatement of the law, isn't that an error? The jury instruction has to fairly cover the law, but it's not an error for the district court to reject an instruction that is overbroad. And that's what Mr. Lucero asked for. We cited cases, including one from 2017 in this court, that said that the district court is under no obligation to redraw an instruction if it is brought to its attention. What do you think the instruction should have said? What's the proper interpretation or instruction that the court should have given? Well, the instruction that the Fourth Circuit gave in Cooper included knowledge of the physical and Mr. Lucero's proposed instruction included that, but also included that he had to have knowledge specifically of jurisdiction. And that was the part where Mr. Lucero's argument was overbroad. The waters of the United States element is solely a jurisdictional element. Mr. Gunter, when you look at the reg, and it defines what waters of the United States are, granted it talks about jurisdictional waters and non-jurisdictional waters, but then it doesn't give a geographical definition. So when you look at 33 CFR section 328.3, these are substantive definitions of different types of hydrology, tributaries, lakes and ponds and impoundments, adjacent wetlands. The only place where a geographical term is mentioned is in the definition waters of the United States. So I think Ms. Packle was suggesting that waters of the United States is more than just a jurisdictional element. It is that, but it's also a substantive element. Clearly, if this was a tributary in Canada or Mexico, there would be no jurisdiction. But we have to go beyond, were we in the United States, a jurisdictional issue and look at the substantive definition of the waters of the United States. Why are they wrong? Why is that not also a substantive element of this offense? Sure. Let me give you a textual reason to distinguish generally the nation's waters from waters of the United States. So 33 USC 1251 sets forth the purposes of the act. And it says that one of the purposes is to restore the nation's waters. So that identifies the waters that Congress believes are worthy of protection. But that section also says that Congress recognizes that states and the federal government have distinct roles to play in protecting those waters. So waters of the United States is not there to establish what conduct is harmful, but rather which of the universe of harmful conduct discharging to the nation's waters is within Congress's power to regulate. And so that makes it like a jurisdictional requirement, like the federal agent requirement in Fiola or the firearm that has traveled in interstate commerce. Isn't there a difference that in Fiola, it was the assault that was the evil Congress was intending to prevent. And that evil exists regardless of whether the victim is a federal agent or not. Whereas here, the evil that Congress intends to prevent is the degradation and pollution of water. So it seems like how this water is defined, including the substantive definitions in the CFRs, is the substantive element of the offense. I mean, I think it's distinguishable from Fiola. I'm sorry, I didn't mean to interrupt. That's quite right. Go ahead. Mr. Lucero has made something out of the fact that the experts testified that waters of the United States, and they say that it's fine for the experts to testify that wetlands existed. It sounds like the distinction or the point we're making about how these regulations define wetlands is valid insofar as we're trying to figure out whether waters are present. And that's what the government's experts were there to testify about. But then the additional step of whether those were waters of the United States goes only to jurisdiction. It doesn't help define the harmful conduct. Counselor, doesn't the regulations only define waters of the United States include the wetlands and drylands and tributaries? But my understanding is that your argument is that they have to know that the pollutant was discharged into water under 1326.6. And so the regulations don't cover that definition of water, do they? I'm sorry, which definition of water? Oh, no. The term water in 1362... Discharged into water. That's right. It is not further defined. And so that's the kind of ambiguous term that the agencies established through their regulations. But it's not currently defined under regulation, correct? I'm not aware of a regulation that separately defines water in the context of what is a pollutant that is discharged into water. The agencies draw lines between water, including wetlands and uplands using the definition that is in 328.3, but also using a wide variety of other materials that the government's experts testified about in this case. There are manuals, instructions, there are objective standards that the public can refer to, to determine whether waters are wetlands. And this obviously goes not only to the knowledge question, but also to the vagueness question. And so the experts can go out and say, as Lucero requested the jury be instructed, what are the physical characteristics of the land here that identify it as wetlands? And the experts that the Sobrato organization hired and that testified for the government here didn't have any problems figuring out that there were wetlands present here. They testified that they saw multiple feet of material deposited directly onto wetland vegetation. Dr. Gallicados, an expert from the Corps, went out two months after Lucero's activities ended, when there still had been no rain, and she said that without even looking at the hydrology, because of the lack of rainfall, she was able to tell from the soils and from the vegetation that wetlands were present there. So Councilor, are you saying the jury could decide that just that based off of the physical characteristics of the land, that the pollutant was discharged into water, even though the water is not further defined by regulation? Yes, that's right. And this is the harmless error argument that we make. Even if this element is required to be given to jury, the jury could have found beyond a reasonable doubt that the physical characteristics were evident to Mr. Lucero, who says that he walked the land with Mr. Olivero and was able to see... I'm sorry, Mr. Lucero doesn't say that he walked the land. Mr. Olivero said that Mr. Lucero walked the land with him and could see these characteristics. So, for example, some of the truck drivers testified that they were not able to back up their trucks all the way into where the spongy ground there, and they were afraid that the trucks would get stuck. And so instead, they dumped the fill material in an upper area, and Mr. Lucero personally, or his associates in the bulldozer, pushed that back over a nine or ten foot drop into the area that the trucks were not able to go because it was too wet. So even if the jury instruction here was an error and should have included something about the physical characteristics of the land, our submission is that the jury beyond a reasonable doubt could have found that Mr. Lucero knew those physical characteristics that marked the area as wetlands or waters. Mr. Gunter, can I ask you to go back to the statute for a moment? Yes. If there's no regulatory definition of water, as the term water is used in the definition of pollutant, which is 13-20-86-6, do we just use the ordinary common understanding of the term water? I mean, if we don't use the substantive definition of waters of the United States, which is in the regs and explains tributaries, impoundments, lakes, et cetera, we just use 13-20-86-6, water with no regulatory definition. Isn't that just the ordinary understanding of water? In which case, how does the statute not criminalize adding heat to water in a kettle? Heat's one of the pollutants mentioned in that statute, or any other substance into a bathtub, flushing the toilet, all sorts of things that involve water, which you've said is not defined in the regs. So how does that work so that if we can't look at WOTUS or anything other than jurisdiction, we have no substantive definition of water, and then the statute seems to be both over-inclusive and under-inclusive. I'm not saying that you can't look at the definition of WOTUS 328.3 for anything other than jurisdiction. I'm saying that Mr. Lucero didn't have to have knowledge of the jurisdiction in order to bring the waters described in that section under the reach of the Act. I think it's fair to say that the agencies use those definitions both to identify where jurisdiction lies and to identify water. And the Supreme Court recognized that in Repatos. It said that these definitions are valid to identify water as long as they're actually identifying waters. It made an inquiry into the meaning of navigable water to ensure that the waters were truly within the jurisdiction that Congress intended to establish in the Act. But it didn't question that the Corps and EPA can define the universe of waters that should be considered waters. For example, to draw a line between uplands and wetlands. The Court should not choose where it thinks the line should be just based on the meaning of the term water. The reason that Congress has delegated the authority to the agencies to write these regulations is because they are experts. They can establish objective standards that apply all over the nation and that were used here. And so there is some level of technical knowledge in the administration of this program that's required beyond the simple words in the statute. That technical knowledge also is included in 328.3. But the question... To get to Mr. Lucero's counsel's point, how would a person of ordinary knowledge and understanding know that? You're saying that the instruction didn't have to say a discharge even into water, let alone waters of the United States, just the physical characteristics of the property. What was Mr. Lucero supposed to determine that based on things he saw there that this was actually a legal status of that land? He doesn't have to know whether the physical characteristics match it to the legal definition of wetlands and waters that the Court has promulgated. But he asked, as he said, this is his requested instruction. He wanted the jury to be instructed that he should know the physical characteristics of the property that identify it as a wetland, including his example, water-loving vegetation. And so he was able to see the physical characteristics of this land just by virtue of being there. Finally... Counselor Gattis, one more question. Since the agency haven't defined water as part of discharge into water as from the definition of pollutant, why shouldn't the jury just use the ordinary meaning of water and the literal meaning of water? And so how do you prove that in this case? Well, the jury should use the instructions that were given by the District Court, who defined waters of the United States for them. Yes, but that's not to discharge into water as part of the definition of pollutant. I'm sorry, Judge Bumate, I'm not entirely understanding your question. And maybe it's because it seems that if you just take the ordinary meaning of water, that wouldn't necessarily indicate wetland, and yet wetlands are plainly covered under the Clean Water Act. So you seem to be suggesting that the jurisdiction of the United States under the Clean Water Act would be broader than the physical characteristics of the waters that are covered. What I'm suggesting is that the 328.3, the instruction that the District Court gave to the jury, helps them understand the physical characteristics of water that are covered, and also helps them understand the jurisdictional facts that they need to find in order to establish the United States jurisdiction. But isn't that just agreement with Mr. Lucero's counsel that waters of the United States is both a substantive element and a jurisdictional element? Waters, I would say, is a substantive element. Waters of the United States is a jurisdictional element. I think the Fourth Circuit's jurisprudence might help here, because in Cooper, the Fourth Circuit said that waters of the United States is a classic jurisdictional element that does not require mens rea. And it said that even though, in Wilson, it was considering the deposit of dredge or fill material. The court there said that dumping dirt is not an inherently dangerous or deleterious action, but in the context of the Clean Water Act, which governs inherently dangerous and deleterious actions, that fill material is different distinction here than the one the Fourth Circuit drew in Cooper, where it found that mens rea was a jurisdictional element. So the knowledge issue would have to go to water, just water, under the Fourth Circuit. There still would need to be a knowledge that you are dredging the pollutant into water. If Mr. Lucero had requested that instruction, then we would agree that would have been proper. And his knowledge includes knowledge of discharge into waters or wetlands. The way you show that knowledge is by knowledge of the physical characteristics of the property that identify waters or wetlands. I see that my time is up, and so I have just one final thought to leave the court with. The court will have to decide this case in a way that applies to both trespassers and landowners. And Mr. Lucero is essentially treating his trespasser status as a mitigation factor for his guilt. He said his trespasser status makes it easier for him to argue that the land looked dry, or I didn't know the qualities of the land, or the Clean Water Act is hard to understand. But the Soprano organization, a responsible landowner here, looked at the same land, saw the same physical characteristics, and understood what they needed to do to comply with the law. And they did that. And giving Mr. Lucero a chance to argue that he was wrong, and that his actions were illegal, even if he didn't know exactly why they were illegal. For these reasons, the jury correctly found him guilty, and the conviction should be affirmed. Thank you, Mr. Gunter. All right, Ms. Packle and Ms. Hanson, I think you only have 47 seconds, but we did go over time with Mr. Gunter, so I'll give you an additional two minutes in addition to the 47 seconds. Thank you, Your Honor. I'll try to be quick. First of all, I want to clarify that the relevant statutory language is not just water, it is navigable water. I know there's some overlap between the subsections of 1362. But if you look at Rapanos at page 723, if you look at Sackett at page 162, and if you look at the Supreme Court's recent CWA case, Maui, at page 1469, you'll see that they uniformly talk about this conduct, discharge of a pollutant into the navigable waters. And so the government is wrong to read that navigable out of the statute. Well, counsel, isn't it a fact that you're reading out discharged into water from the definition of pollutant? No, Your Honor, I disagree. I think the statute, if you look at the indictment, the superseding indictment at page, I think it's around page 1555 of the Extracts of Record, throughout this, the relevant statute, which is 1344, that's the permitting scheme that applies to fill material, and that talks about navigable waters. And so I think, and I think we discussed this in our brief as well, you need to look at the specific statutory permitting scheme that applies here. And the Supreme Court, again, in discussing it in all of the three cases that have talked about depositing fill material, they talk about navigable waters. The second point I'd like to make about the government's comments about the with expertise in the science. The experts spent years and thousands of dollars, hundreds of thousand dollars mapping the site. And that is separate from whether a person of common intelligence would have known the nature of these sites. Again, this is a criminal case, felony charges here, and there had to have been some element of knowledge. The jury did not make any findings about knowledge. It was not asked to make any findings, not even about water, let alone navigable water, or the connection between the actual fill sites here and Malrie's slough, which was how the instruction was filled. If there are no further questions? Well, the only question I have is for Judge Bumate. You had asked a question of Ms. Hanson, and she was going to answer it on rebuttal. Did you, are you satisfied with the answer, or would you like her to answer your question? If she has a response, I'd be happy to hear it. Oh, she informs me that I have apparently responded to the question. If there's any follow-up, I would be happy to supplement. That's fine, thank you. The difference between 1362-6 and 1362-12. Thank you. I ask that Mr. Lucero's convictions be reversed. Thank you. Thank you, counsel, for your arguments this morning. They were very helpful. We'll take this case under submission, and we are adjourned for the morning. Thank you. This court, for this session, stands in recess.
judges: Marquez, Bade, Bumatay